IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE RHONE, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action File No. |
| vs. | ) | 1:16-cv-05215 |
| | ) | |
| MEDICAL BUSINESS BUREAU, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Medical Business Bureau, LLC ("MBB") hereby replies to Plaintiff's Response in Opposition to MBB's Motion for Summary Judgment as follows:

**INTRODUCTION**

Plaintiff Diane Rhone ("Rhone") received physical therapy services from Illinois Bone and Joint Institute ("IBJI") in January and February 2013. At issue in this case are nine dates of service during that time period. There is no dispute that Rhone incurred a debt of $60 for each of the nine dates of service. There is no dispute that MBB reported that Rhone owed $60 for each of those nine dates of service. Rhone's complaint is that MBB reported that she owed $60 for each date of service instead of reporting one tradeline of $540. Rhone's arguments are not supported by the facts or case law and only mislead this Court as to what actually occurred.

**I.　　There Is Nothing False, Deceptive or Misleading About MBB's Accurate Reporting of Rhone's Nine Debts.**

Rhone alleged in her First Amended Complaint that MBB violated 15 U.S.C. § 1692e by reporting that she owed nine debts when she "owed only one debt." *See* D.E. 22 ¶¶ 22 and 27. Rhone now concedes that she owes nine separate debts. *See* D.E. 60 p. 2 (acknowledging different service dates were treated by HIS as nine "separate account[s]"), p. 9 (acknowledging "HIS sent

nine separate debts to MBB"); D.E. 61 ¶¶11-12 (acknowledging HIS identified the service dates as nine separate debts). Recognizing that the law and facts do not support her allegations, Rhone now changes her claims to assert that simultaneously reporting nine tradelines three years after the debt was incurred constitutes a misrepresentation. *See id.* at p. 3. She further argues that it was misleading to report her debts separately when they were incurred within one month. *See id.* As a result of these alleged misrepresentations Rhone argues that her credit rating and ability to secure financing was impaired. *See id.* at p. 5. Case law is clear, however, that "[a] plaintiff's response to a motion for summary judgment cannot add claims to his complaint." *See Neely v. Garza*, 2017 U.S. Dist. LEXIS 35228, *27 (N.D. Ill. Mar. 13, 2017). In any event, and as explained in more detail below, these new claims are not meritorious as neither the case law nor established facts in the record support the arguments made.

    a. **Rhone Incorrectly Relies on The Fact Section Of *Kohut* And Ignores Its Actual Holding.**

Rhone misleads this Court by quoting *Kohut*'s factual background section and pawning it off as the court's holding. Citing *Kohut*, Rhone argues that reporting multiple tradelines "is detrimental to consumers [because] credit scoring systems assess the total number of tradelines when calculating credit scores." *See* D.E. 60 p. 5 (citing *Kohut v. Trans Union, LLC*, 2004 U.S. Dist. LEXIS 15724, *3 (N.D. Ill. Aug. 11, 2014)). Notably, Rhone's citation is a direct quote from the opinion's factual background section, which was taken directly from the plaintiff's complaint, and did not constitute the holding of the court. *See Kohut*, 2004 U.S. Dist. LEXIS 15724 at *2. Throughout her briefing, Rhone relies on this quotation in a feeble attempt to demonstrate she was detrimentally damaged by MBB's multiple tradelines. The *Kohut* court, however, specifically addressed this detrimental damage argument and rejected it:

> Indeed, if Kohut's "it's illegal for a collection agency to take action which amounts to turning the thumbscrews" argument was tenable, collection agencies would never be able to report delinquent accounts they would thus necessarily negatively impact consumers' credit ratings. Sections 1692e and 1692e(10) of the FDCPA do not, however, go this far. Instead, they proscribe "false, deceptive or misleading" reporting, as opposed to the reporting of accurate information that is detrimental to a consumer.

*Id.* at p.*9-10. As Rhone's detrimental damage argument is not supported by any case law or evidence it must similarly be rejected here.[1]

Not only does Rhone misstate *Kohut*, she also completely ignores its holding. Rhone concedes that MBB's reporting is accurate – as she admits she owes $60 for each of the nine dates of service. *See* D.E. 61 ¶8. Rhone's only complaint is that MBB reported each $60 debt separately. This district has already decided this issue, however, and has held as follows:

> The parties agree that CCB's report was accurate. This sounds the death knell for Kohut's FDCPA act claim against CCB because it is not false, deceptive, or misleading for CCB to tell a consumer credit reporting agency that it attempted to collect a debt that Kohut concedes is valid even if that leads to two records relating to the same debt in Kohut's credit report.
>
> Because Kohut does not claim that the information that CCB reported was itself inaccurate (instead, he claims that the effect of that report – the double entry—was inaccurate), it is not "false, deceptive, or misleading" to report that CCB was unable to collect a valid debt.

*Kohut*, 2004 U.S. Dist. LEXIS 15724 at * 2. Under *Kohut*, Rhone's arguments must fail. Similar to *Kohut*, Rhone's concession that the amounts reported are accurate is fatal to her FDCPA claims.

b. **Rhone's Reliance on *Frierson* and *Akalawadi* is Similarly Misplaced**.

Rhone's reliance on *Frierson v. States Recovery Sys.,* 2017 U.S. Dist. LEXIS 90841(E.D. Cal. June 12, 2017) is misplaced because there are no facts in evidence that support her argument. The court in *Frierson* granted a debt collector's motion to dismiss, relying on *Kohut*, holding that

---

[1] As explained in more detail below, there has also been no admissible evidence submitted by Rhone to support she was actually harmed by any action taken by MBB.

- 3 -

reporting multiple tradelines for the same debt is not a violation of the FDCPA if the information is accurate. *Frierson v. States Recovery Sys.,* 2017 U.S. Dist. LEXIS 90841, *6-7 (E.D. Cal. June 12, 2017). The tradelines in that case involved two separate billing cycles. *Id.* Rhone latches on to that distinction and argues that her debts were incurred within the same billing cycle. Rhone has not and cannot, however, cite to any evidence in the record that the services fell under the same billing cycle. Rather, Rhone makes an unfounded assumption that since the debts were incurred in January and February 2013 that they must encompass one billing cycle. Notably, that the service dates were assigned as separate accounts (a fact acknowledged by Rhone), strongly suggests that the creditor did not define the debts as part of the same billing cycle. Rhone could have requested more detailed information from the creditor during discovery on this issue but failed to do so. Without any evidence to support the argument, Rhone's argument must fail and thus any reliance on *Frierson* is misplaced.

Rhone contends that her situation is more akin to the facts in *Akalwadi v. Risk Mgmt. Alternatives,* 336 F. Supp. 2d 492 (D. Md. 2004). In *Akalwadi,* the defendant admitted there was an error that caused it to report the same debt twice, therefore showing that plaintiff owed twice the amount that was actually owed. *Id.* Conversely here, Rhone concedes that she owes $60 for each of the nine dates of service for a total owed of $540, which is exactly how the debts were reported. *See* D.E. 61 ¶¶8, 12. Moreover, Rhone acknowledges that the reporting was not duplicative. *See id.* at ¶13. Therefore, the case at bar is a completely different factual scenario than *Akalwadi* and any reliance on same is misplaced. In order for Rhone's situation to be more akin to *Akalwadi,* MBB would have had to report that she owed 18 separate debts in January and February 2013 for a grand total of $1,080. That is not what happened. Therefore, *Akalwadi* does not apply.

### c. **MBB Did Not Wait Three Years To Report Rhone's Debts.**

Rhone argues that MBB misrepresented her debts by waiting three (3) years since the charges were incurred to report the debts. That is incorrect. MBB reports debts to the credit reporting agencies 60 days after the debt is placed with MBB. *See* D.E. 55-4 (Deposition of Eric Mock) 46:1-12. The debts were placed with MBB in November 2013, therefore, Rhone's debts would have been first reported in January 2014. *See* D.E. 61 ¶10. Any argument that a three (3) year delay was misrepresentation is completely false and unsupported by the evidence.

### d. **There Is No Evidence That Rhone Has Been Damaged.**

In her brief, Rhone argues that she was damaged by MBB's actions. However, such damage has no bearing on this case because Rhone is not seeking actual damages, including emotional distress damages, or statutory damages. *See* D.E. 65 (Defendant's Response to Plaintiff's Statement of Material Facts) ¶24. Rhone even admits that damages are irrelevant to her case. *See id*. The only relief she is seeking is to have the nine tradelines consolidated into one tradeline. *See id.* Such a claim for relief was not requested in either Rhone's initial or amended complaint. *See* D.E. 1 and 22.

Even if Rhone were seeking damages, the record is devoid of any admissible evidence proving such damage. For the first time in this case, Rhone describes her "damage" in a self-serving declaration attached to her summary judgment brief. *See* D.E. 51-2. Her declaration states that she suffered stress, aggravation and harm to her credit because of MBB's actions. *Se* D.E. 51-2 ¶8. In October 2016, MBB specifically requested that Rhone describe the nature of any damage that MBB caused her. *See* D.E. 65 ¶24. Rhone responded refusing to provide any of the information that MBB requested stating she will defer a response until discovery is near to an end. *See id.* Rule 26(e)(1) requires parties to timely supplement their discovery responses if the party

learns that a response is incomplete or incorrect. *See* Fed. R. Civ. Pro. 26(e)(1). At no point did Rhone amend or supplement her discovery responses prior to the end of discovery explaining or identifying any damage. Not even during her deposition did Rhone identify any stress or aggravation related to MBB's activity. Only after discovery closed and MBB did not have an opportunity to question her again does she now claim any damage. Rhone's failure to comply with Rule 26(e)(1) precludes Rhone from now using the undisclosed information at summary judgment or at trial unless the failure was substantially justified or harmless. *See* Fed. R. Civ. Pro. 37(c)(1). As Rhone has not even attempted to argue, let alone established, that the failure to supplement was justified or harmless, this Court <u>must</u> disregard Rhone's testimony pertaining to damages. *See Musser v. Gentiva Health Serv.*, 356 F.3d 751, 758 (7th Cir. 2004) ("[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless"); *Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 839 (N.D. Ill. 2006) ("a court must exclude evidence provided by a witness that the party did not disclose during discovery, if the failure to disclose is without substantial justification and is not harmless"); *see also* Rule 37(c) official comments (1993, 2000).

Even if this Court could consider Rhone's brief conclusory testimony, same is insufficient to support a genuine issue of material fact for trial regarding emotional damages under Seventh Circuit case law. *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (Seventh Circuit has "maintained a strict standard for emotional damage because they are so easy to manufacture" when "the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail, he cannot rely on mere conclusory statements"); *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) ("bare allegations by a plaintiff that the defendant's conduct made him 'depressed', 'humiliated,' or the like are not

sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action"); *Basset v. I.C. System, Inc.*, 715 F. Supp. 2d 803, 812-813 (N.D. Ill. 2010) (holding FDCPA plaintiff "failed to present evidence supporting a genuine issue of material fact for trial regarding his emotional distress damages because his conclusory statements failed to contain sufficient detail to overcome the Seventh Circuit's strict standard in proving emotional damages").

Similarly, Rhone's argument that her credit rating and ability to secure financing was damaged fails on its face because it is based entirely on inadmissible hearsay. Rhone's only source of knowledge regarding why she was denied a car loan is that some unidentified person told her. *See* D.E. 65 ¶22. This is classic hearsay – an out-of-court statement that Rhone attempts to introduce to prove that she was denied credit because of MBB's actions – and it is inadmissible. *Lamar v. Experian Info. Sys.,* 408 F. Supp. 2d 591, 596-97 (N.D. Ill. 2006). Therefore, it cannot be relied on by this Court in deciding the parties' cross-motions for summary judgment. *See id.* Without the use of the inadmissible testimony, Rhone's claim of credit damage is entirely empty. Accordingly, judgment is warranted in MBB's favor on the issue of actual damages, regardless of whether this Court considers the previously undisclosed testimony contained in Rhone's declaration.

## II. **MBB Did Not and Could Not Change the Number of Debts Rhone Owed.**

Rhone alleges that MBB violated 15 U.S.C. § 1692f by taking her single debt and breaking into nine different debts. *See* D.E. 22 ¶28. As the record shows, MBB could not and did not do as Rhone alleges. MBB does not manipulate the data it receives from the creditor and treats each debt in the same manner that the creditor treats it. *See* D.E. 55 ¶¶ 14, 15, 16. Rhone argues that MBB can manipulate the data it receives from the creditor because MBB only sent one letter for

Rhone's nine debts. Although it sent one letter for all nine debts, each debt was identified separately on the one letter. Rhone completely ignores MBB's two witnesses that testified to this fact:

Deposition of Eric Mock (D.E. 55-4) 35:13-25:

Q: Do you know if each letter included multiple accounts or each letter just included one account?

A: If the accounts are assigned on the same day, the consumer for Medical Business Bureau will get one notice with their – I'm drawing a blank.

Q: Take your time.

A: With their rights, and on the back of **the letter it will list all the accounts that were assigned to collections on a specific date**.

Deposition of Terri Blye (D.E. 55-3) 51:17-52:3:

Q: Okay. Alright. When MBB receives multiple days of service of medical care, is MBB able to put those multiple dates of service into a single letter to a consumer and say we have billing from first date to last date of service which is owed in the amount of $600, please pay?

A: It depends on what letter. The first notice it can only be the same client. So if ABC Hospital gave us two accounts on the same day, **then they would get one letter showing both of those accounts.** If it was a different client, then no, they would have gotten two letters.

Rhone correctly states that only one letter is sent for the nine debts but noticeably fails to inform this Court that each of her debts is listed separately on the letter. As Rhone has done throughout her briefing, Rhone misleads this Court as to what the record actually reflects. After reviewing the entire record, it is clear that MBB cannot change, consolidate, or separate the debts it receives from the creditor. It was not MBB's decision to report the debts as nine separate debts. That decision was made by IBJI and HIS.

Rhone's argument is essentially that she wants all of her debts treated like credit card debt – one debt that just increases over time. However, she fails to provide any case law supporting

that argument. Furthermore, the absurdity of this argument is supported by the fact that Rhone's credit report is full of multiple tradelines for the same creditor regarding the same debt yet she has not filed suit against any other entity. *See* D.E. 55-1 (Deposition of Diane Rhone) p. 64-69. Her credit is replete with this same issue but MBB is the only company she chose to sue. *Id.* at 68:11-12.

Finally, § 1692f is a catch-all provision, which applies only to conduct that is unfair but is not identified in any other section of the FDCPA. *See e.g.*, *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 432 (D.N.J. 2013) ("Courts have therefore determined that § 1692f cannot be the basis of a separate claim for complained of conduct that is already explicitly addressed by other sections of the FDCPA[.]"); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1329 (S.D. Fla. 2009) ("[A] claim of a violation of Section 1692f is deficient if it 'does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA.'") (quoting *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)); *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008) ("Baker's claims are all premised on two basic types of alleged conduct: improper disclosures and false threats of legal action. Multiple specific FDCPA provisions address both these types of conduct. Section 1692f is therefore, inapplicable[.]"); *Christy v. EOS CCA*, 905 F. Supp. 2d 648, 656 (E.D. Pa. 2012) (judgment in defendant's favor appropriate when § 1692f claim "does not identity any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA"); *Taylor v. Health W. Williams, LLC*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) (dismissing Section 1692f claim where plaintiff failed to plead misconduct other than that asserted to violate other FDCPA provisions). Because Rhone has already pled conduct that she contends specifically violates §

1692e, that same conduct cannot also implicate § 1692f, particularly where Rhone has failed to specifically identify how the conduct is also unfair and unconscionable under § 1692f.

## CONCLUSION

Rhone owes a $60 debt for each of the nine dates of services provided by IBJI. She has failed to pay any of those debts. MBB reported that Rhone owes $60 for each of those nine dates of service for a total of $540. There is no dispute that the debts are owed and that the amounts being reported are accurate. Those facts alone are not in dispute and are sufficient for summary judgment to be granted in MBB's favor. Rhone's argument regarding simultaneous reporting is not supported by any case law and not supported by the admissible evidence in the record. For these reasons, MBB respectfully requests that its motion for summary judgment be granted in its entirety and that Rhone's motion for summary judgment be denied in its entirety.

Respectfully submitted,

**MEDICAL BUSINESS BUREAU, LLC**

s/ Nicole M. Strickler
Nicole M. Strickler
IL # 6298459
Messer Strickler, Ltd.
225 W. Washington St., Suite 575
Chicago, IL 60606
(312) 334-3442 (direct)
(312) 334-3473 (fax)
nstrickler@messerstrickler.com
*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of August 2017, a true and accurate copy of the foregoing was filed with the Clerk of Court using the ECF system which will send notification of such filing to the attorneys of record.

s/ Nicole M. Strickler
Nicole M. Strickler
IL # 6298459
Messer Strickler, Ltd.
225 W. Washington St., Suite 575
Chicago, IL 60606
(312) 334-3442 (direct)
(312) 334-3473 (fax)
nstrickler@messerstrickler.com
*Attorney for Defendant*
